929 So.2d 381 (2006)
Annie HODGES, Appellant
v.
MADISON COUNTY MEDICAL CENTER, Appellee.
No. 2005-CA-00532-COA.
Court of Appeals of Mississippi.
May 16, 2006.
James C. Patton, Kosciusko, attorney for appellant.
James A. Becker, Robert H. Pedersen, Jackson, attorneys for appellee.
Before KING, C.J., IRVING, CHANDLER and ISHEE, JJ.
*382 IRVING, J., for the Court.
¶ 1. Annie Hodges sued Madison County Medical Center (MCMC), alleging that she was injured by a "dangerous and hazardous condition" on the premises of MCMC. After discovery, the Madison County Circuit Court granted summary judgment to MCMC. Aggrieved, Hodges appeals and argues that the circuit court erred in finding that MCMC was immune from liability by virtue of Mississippi Code Annotated section 11-46-9(1)(v) (Rev.2002).
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On August 20, 2002, Hodges was visiting her niece at MCMC.[1] When Hodges entered her niece's room, the chair-bed in the room was fully extended into the bed position. Hodges sat on the end of the chair-bed, and it collapsed. Although Hodges's body did not hit the floor, she nevertheless went through the frame of the chair-bed, causing her to hit her back, shoulders, head, and elbow against the wall and causing her knees to fold up toward her chest. An examination of the chair-bed revealed that the mattress was supported by a shoestring instead of the metal spring that should have been in place to support the mattress.[2]
¶ 4. Joe Jenkins, MCMC's maintenance director, and Jasper Lott, his assistant, comprise the entire MCMC maintenance staff.[3] Jenkins testified that he and Lott perform necessary maintenance on the entire hospital, excluding the air conditioning system and medical equipment. According to both Jenkins and Lott, MCMC employs a maintenance system in which a nurse or other hospital employee completes a work order for any broken or damaged equipment that is discovered in the hospital. The maintenance department then repairs or replaces the equipment. If no work order is completed for a piece of equipment, then no repairs or preventive maintenance is performed. Essentially, MCMC's maintenance department's sole responsibility is to repair or replace broken or damaged equipment only after the department has been notified. The maintenance department does inspect equipment for possible defects or damage. Since no complaints or work orders had ever been received by MCMC's maintenance department in reference to the chair-beds, the chair-beds had never been inspected.
¶ 5. Jenkins admitted that no real annual inspections are done on the equipment that the hospital utilizes in its rooms. However, he testified that, since he had been maintenance director, MCMC had not had any kind of report about anyone being injured while sitting on the end of a chair-bed that was fully extended. Jenkins also testified that, since he had been maintenance director, he had not heard of any problems associated with the chair-bed. Jenkins further testified that MCMC does not stock shoestrings in its maintenance department, nor does MCMC's maintenance department use shoestrings to make repairs to chair-beds or any other equipment.

*383 STANDARD OF REVIEW
¶ 6. "The Mississippi Legislature has determined that governmental entities and their employees shall be exempted from liability in certain situations as outlined in Mississippi Code Annotated section 11-46-9." Mitchell v. City of Greenville, 846 So.2d 1028, 1029(¶ 8) (Miss.2003). "This exemption, like that of qualified or absolute immunity, is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation." Id. (citations omitted). "Therefore, immunity is a question of law and is a proper matter for summary judgment under [Rule 56] of Mississippi Rules of Civil Procedure." Id. When reviewing the grant of a motion for summary judgment, we examine the trial court's decision de novo. Harrison v. Chandler-Sampson Ins., Inc., 891 So.2d 224, 228(¶ 11) (Miss.2005) (citations omitted). In conducting our review, we look at "all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." Id. We view the evidence "in the light most favorable to the party against whom the motion has been made." Id. "If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed; otherwise, the decision is affirmed." Id.

ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 7. The sole issue of this appeal is whether the trial judge correctly granted summary judgment in favor of MCMC. In granting summary judgment, the trial judge held that MCMC was exempt from liability under the Mississippi Torts Claim Act, which states in pertinent part:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care[.]
Miss.Code Ann. § 11-46-9(1)(v) (Rev. 2002).
¶ 8. Hodges contends that she was an invitee, and, as such, MCMC owed her a duty of reasonable care. She maintains that this duty of reasonable care extends to reasonable inspection of the premises to discover any obvious or latent defects, as well as making repairs reasonably necessary to ensure her safety and protection. Hodges argues that she is not required to prove that MCMC was aware of the dangerous and hidden condition of the chair-bed, but "must only produce enough evidence to suggest that the latent defect in the chair-bed was a hidden, dangerous condition, in the nature of a trap, and that in the exercise of reasonable care, MCMC ought to have ascertained its existence and anticipated that someone might be injured by it." Hodges further argues that MCMC could have discovered or, at least, would have had constructive knowledge of the condition of the chair-bed had its maintenance employees conducted a reasonable inspection of the premises and the equipment utilized at the hospital. Therefore, Hodges maintains that MCMC should not have been granted immunity under section 11-46-9(1)(v).
¶ 9. MCMC argues that, under section 11-46-9(1)(v), it is liable for Hodges's injuries *384 only if she is able to show one of the following: (1) that an employee of MCMC caused the dangerous condition or (2) that MCMC had actual or constructive notice of the dangerous condition and had an opportunity to protect or warn Hodges. MCMC contends that there is no evidence that an employee of MCMC placed the shoestring on the chair-bed. MCMC also contends that there is no evidence that MCMC had actual or constructive notice that a shoestring was used to connect the mesh to the frame of the chair-bed, or that if MCMC had such notice, it acquired that notice early enough to protect or warn Hodges. MCMC further argues that section 11-46-9(1)(v) does not allow the imposition of liability just because MCMC "failed to inspect its premises." Therefore, MCMC maintains that it is immune from liability and that the lower court's grant of summary judgment was proper.
¶ 10. Hodges may defeat MCMC's immunity defense under the statute if she can prove: (1) a dangerous condition, (2) on MCMC's property, (3) which MCMC caused by negligent or wrongful conduct, or of which it had actual or constructive notice and an adequate opportunity to protect or warn against, and (4) the condition was not open and obvious. Lowery v. Harrison County Bd. of Supervisors, 891 So.2d 264, 267(¶ 12) (Miss.Ct.App.2004); Miss.Code Ann. § 11-46-9(1)(v) (Rev. 2000).
¶ 11. There was absolutely no evidence that MCMC caused the dangerous condition of the chair-bed. Hodges does not allege, and the evidence does not support, that an employee of MCMC placed the shoestring on the chair-bed. It is true that MCMC failed to annually inspect the chair-beds it used in the hospital, but failure to inspect is not the same as causing a condition. There was also no evidence that MCMC had any actual notice about the dangerous condition of the chair-bed. The credible testimony was that MCMC's maintenance department had not received any work orders from a single hospital employee in relation to the chair-beds, and that there were no reports of anyone being injured while sitting on the end of a fully extended chair-bed before Hodges's accident. Furthermore, there was insufficient evidence to establish that MCMC had constructive notice of the dangerous condition of the chair-bed and adequate time to protect or warn Hodges against the danger. The testimony indicated that the condition was not open and obvious to MCMC. Even if we were to find that MCMC should have conducted reasonable inspections of its premises, there is still no certainty that the dangerous condition of the chair-bed would have been discovered before Hodges's accident.[4]
¶ 12. Although Hodges's accident was unfortunate, we nevertheless find that MCMC was immune from liability pursuant to Mississippi Code Annotated section 11-46-9(1)(v) (Rev.2002). Therefore, we find that the trial court's grant of summary judgment was proper.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Hodges's niece was a patient at the hospital.
[2] The chair-bed has a metal frame and legs. When the chair-bed unfolds into a bed, the mattress lays on a mesh material. Four springs with hook ends and two cloth ties connect each end of the mesh to the chair-bed's metal frame. The four springs hook into each end of the mesh and into each end of the metal frame, and the two cloth ties are attached to each end of the mesh and are tied to each end of the metal frame.
[3] At the time of the incident, Jenkins had been MCMC's maintenance director less than six months, and Lott had worked for MCMC for about nine years.
[4] Given the number of patients who regularly check in and out of the hospital, it is logical to conclude that a patient or family members of a patient could have placed the shoestring on the chair-bed at any point in time without any prior knowledge of MCMC and its employees.